UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE LAVETTE RUSHING,<br><br>   Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC and TRANSUNION LLC,<br><br>   Defendants. | CIVIL ACTION<br><br>COMPLAINT 1:18-cv-08544<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

**NOW COMES** Michelle L. Rushing ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Caliber Home Loans, Inc. ("Caliber"), and TransUnion, LLC ("TransUnion") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, Caliber's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in the Northern District of Illinois.

## PARTIES

4. Plaintiff, Michelle Rushing, is a consumer and natural person over 18 years of age who, at all times relevant, owned and resided at the property located at 16652 Thornton Avenue, South Holland, Illinois 60473 ("subject property").

5. Defendant Caliber is a Delaware corporation with its principal place of business located at 2591 Dallas Parkway, Suite 403, Frisco, Texas 75034. Caliber is a foreign company whose primary business is the collection of debts owed to others and servicing loans across the country, including the state of Illinois. Caliber is a furnisher of credit information to the major credit reporting agencies, including TransUnion.

6. Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

## BANKRUPTCY CASE

7. On June 25, 2007, Plaintiff executed a mortgage and note in the amount of $201,162.55 ("subject loan" or "subject debt") in favor of Beneficial Mortgage Company ("Beneficial") secured by the subject property.

8. On December 29, 2012, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 12-50696 ("bankruptcy").

9. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to Beneficial, in the amount of $205,589.00, secured by the subject property.

10. On January 12, 2013, because Plaintiff listed Beneficial as a creditor, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's bankruptcy filing. On January 14, 2013, the BNC served Defendants with notice of Plaintiff's Original Plan.

11. Plaintiff's Original Plan proposed to treat Beneficial's claim as follows:

> "Debtor is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial, in full satisfaction of its claims."

12. On March 5, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from Beneficial appeared at the 341 Meeting of Creditors.

13. On March 27, 2013, the Plaintiff filed her amended Chapter 13 Plan ("Modified Plan").

14. Plaintiff's Modified Plan proposed to treat Beneficial's claim as follows:

> "Debtor is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial, in full satisfaction of its claims."

15. On April 22, 2013, the Plaintiff filed a second amended Chapter 13 Plan ("Second Modified Plan").

16. Plaintiff's Second Modified Plan proposed to treat Beneficial's claim as follows:

> "Debtor is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial, in full satisfaction of its claims."

17. At no time did Beneficial file a proof of claim for the subject debt in Plaintiff's bankruptcy case.

18. On April 25, 2013, Plaintiff's Second Modified Plan was confirmed by the Honorable Janet S. Baer.

19. Plaintiff fully performed her duties as set forth in her confirmed Chapter 13 Plan.

20. By February 12, 2014, Caliber had acquired the servicing rights to the subject loan after Plaintiff was in default on the subject loan.

21. On November 25, 2014, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.

22. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

23. On November 27, 2014, the BNC served Beneficial and TransUnion with the Order of Discharge.

24. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loan by Beneficial or any other party.

25. On March 10, 2015, Plaintiff's bankruptcy case closed.

26. Plaintiff's personal liability on the subject debt was extinguished via her bankruptcy discharge, thus terminating the business relationship with Caliber and any of its successors and assigns.

### CALIBER'S UNLAWFUL COMMUNICATIONS

27. After Caliber acquired the servicing rights to the subject debt, and with actual knowledge of Plaintiff's Chapter 13 bankruptcy and her subsequent discharge, Caliber began actively reporting inaccurate credit information regarding the subject debt to the credit reporting agencies ("CRA's").

28. As a result, on December 2, 2015, Plaintiff filed a complaint in the District Court for Northern District of Illinois, styled *Rushing v. Caliber Home Loans, Inc. and Equifax Information Services, LLC*, Case No. 15-cv-09252 ("Lawsuit"), alleging Caliber and Equifax violated numerous sections of the FCRA.

29. The lawsuit settled on May 4, 2016.

30. The lawsuit was dismissed in June 2016.

31. After the lawsuit was settled and dismissed, Caliber ceased reporting the subject debt to the major credit reporting agencies.

32. However, on or around May 2018, Caliber *again* began reporting derogatory credit information to the CRA's.

33. Despite having multiple notices of Plaintiff's bankruptcy filing and settling a case that alleged unlawful credit reporting activity, Caliber brazenly continued to report false and inaccurate credit information to the CRAs in an attempt to collect on the subject debt.

34. Caliber's collection efforts were highly upsetting to Plaintiff as she was led to believe that the previous lawsuit and her bankruptcy had no legal effect and that she was still obligated to pay on the subject debt; which was the driving force in her decision to seek bankruptcy protection.

35. Plaintiff has been forced to *again* expend time, costs, and effort in consulting with her attorneys and disputing the subject loan as she was led to believe that her previous lawsuit and her bankruptcy had no legal effect as a result of Caliber's conduct.

### PLAINTIFF'S DIRECT DISPUTE TO CALIBER

36. On July 23, 2018, Plaintiff mailed a detailed dispute letter directly to Caliber apprising them of inaccuracies on her credit reports from each of the credit reporting agencies.

37. In her detailed dispute letter, Plaintiff requested Caliber to correct credit reporting issues as Caliber continued to report Plaintiff as entering into a deed in lieu of foreclosure and the subject loan as derogatory to the credit reporting agencies.

38. Specifically, Plaintiff stated: "My account is being reported as deed in lieu of foreclosure. My account should be reported as Chapter 13 bankruptcy. When I filed Chapter 13 I filed to

5

surrender my property. I was released from the note of the property and no longer financially responsible. My credit report should state Chapter 13 bankruptcy. Please update my credit reports immediately with the correct information or I will have to retain legal counsel."

39. On October 31, 2018, Caliber responded to Plaintiff to inform her that it could not determine the specific information that Plaintiff is requesting and it finds that Plaintiff's request to be overbroad.

40. Despite Caliber's actual knowledge of Plaintiff's Chapter 13 bankruptcy and Plaintiff's detailed dispute letter, Caliber willfully choose to continue to report the subject loan as derogatory to the credit reporting agencies. Caliber failed to notate Plaintiff's account as disputed and discharged.

CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO TRANSUNION

41. In July 2018, Plaintiff attempted to seek financing from Quicken Loans to purchase a new home. As a result, Quicken Loans accessed Plaintiff's consumer report to make a credit worthiness determination. Plaintiff discovered that Transunion and Caliber Loans were reporting the subject loan as in a deed in lieu, 120 days past due date, and multiple post-discharge derogatory information, including the failure to notate the account as disputed and discharged.

42. The reporting of the subject loan was inaccurate, incomplete, and materially misleading because the subject loan was discharged in Plaintiff's bankruptcy and should be reporting without any post-discharge derogatory information.[1]

---

[1] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."

### a. Plaintiff's First Dispute to Transunion

43. On August 4, 2018, Plaintiff sent a detailed dispute to Transunion requesting that her credit report be updated to reflect the discharged status of the Caliber subject loan. Plaintiff specifically disputed the Caliber trade line.

44. Upon information and belief, Caliber received notice of Plaintiff's dispute and all enclosed supporting documents from Transunion within five days of Transunion receiving Plaintiff's first dispute. *See* 15 U.S. Code §1681i(a)(2).

### b. Transunion's Failure to Reasonably Investigate Plaintiff's First Dispute

45. On September 7, 2018, Plaintiff accessed her credit report to find Caliber and Transunion were continuing to report the Caliber account with a deed in lieu notation, and a payment status of 120-149 days late.

46. More strikingly, TransUnion and Caliber failed to report the Caliber trade line as disputed and discharged.

47. Despite having actual knowledge of Plaintiff's bankruptcy and after receiving Plaintiff's detailed dispute, TransUnion and Caliber continued to report the subject loan with a "Status" of over 120 Days Past Due as of September 1, 2018, and a derogatory notation of "deed in lieu of foreclosure."

48. The reporting of the Caliber trade line is patently inaccurate, incomplete and creates a materially misleading impression that Plaintiff is delinquent and entered into a deed in lieu of foreclosure. However, Plaintiff is no longer personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on November 25, 2014.[2]

---

[2] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to Caliber, as Plaintiff's Confirmed Chapter 13 Plan surrendered the subject property to Beneficial in full satisfaction of its claims. At no time did Plaintiff enter into a deed in lieu of foreclosure with Beneficial or Caliber.

7

### a. Plaintiff's Second Dispute to Transunion

49. On September 17, 2018, Plaintiff sent *another* credit dispute to Transunion requesting that her credit file be updated to reflect the discharged status of the Caliber subject loan. Plaintiff specifically requested Caliber and TransUnion to investigate the reason the subject loan had a notation of deed in lieu of foreclosure and a derogatory status of 120 days late.

50. Upon information and belief, Caliber received notice of Plaintiff's second dispute and all relevant information from Transunion within five days of Transunion receiving Plaintiff's second dispute. *See* 15 U.S. Code §1681i(a)(2).

### b. Transunion's Response to Plaintiff's Second Dispute

51. On October 16, 2018, TransUnion responded by failing to properly reinvestigate Plaintiff's second dispute. Specifically, TransUnion stated that its investigation of the dispute is now complete and the Caliber reporting was verified. TransUnion and Caliber failed to properly investigate Plaintiff's detailed dispute.

52. Despite having actual knowledge of Plaintiff's bankruptcy discharge and after receiving Plaintiff's detailed disputes, TransUnion and Caliver continued to report the subject loan with a "Remarks" of Deed in Lieu, and a derogatory pay status of "120 Days Past Due Date."

53. Moreover, Transunion and Caliber failed to report the subject loan as disputed and discharged in bankruptcy.

54. The reporting of the Caliber trade line is inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent on the subject loan. However, Plaintiff is no longer personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on November 25, 2014.

## IMPACT OF CONTINUING
## INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILES

55. As of today, the erroneous reporting of the Caliber account continues to paint a false and damaging picture of Plaintiff. Defendants have yet to update the Caliber account to accurately reflect the discharged status, accurate payment history, including the failure to communicate that the subject debt is being disputed.

56. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to her ability to regain her good name and the credit rating that she deserves and has worked hard to earn by completing her Chapter 13 Plan.

57. The inaccurate reporting of the subject debt continues to have significant adverse effect on Plaintiff's credit rating and her ability to obtain financing as it creates a false impression that the Caliber account is due and owing, rendering Plaintiff a high risk consumer.

58. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

59. Moreover, Plaintiff has been denied credit as a result of Defendants' erroneous reporting of the Caliber trade line.

60. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous reporting of the Caliber trade line.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST CALIBER)

61. Plaintiff restates and reallages paragraphs 1 through 61 as though fully set forth herein.

62. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

63. Caliber is a "person" as defined by 15 U.S.C. §1681a(b).

64. Caliber is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

65. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

66. Caliber violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation and reinvestigation from TransUnion and Plaintiff.

67. Caliber violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by TransUnion and Plaintiff.

68. Had Caliber reviewed the information provided by Plaintiff and TransUnion, it would have corrected the inaccurate designation of the subject loan to TransUnion. Instead, Caliber wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

69. Caliber violated 15 U.S.C. §1681s-2(b) by failing to report that the Plaintiff disputed the subject debt.

70. Caliber violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's files.

71. Caliber violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's dispute with TransUnion.

72. Caliber violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion after being put on notice and discovering inaccurate reporting with respect to the subject loan.

73. Caliber failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from TransUnion under 15 U.S.C. §1681i(a)(1).

74. Caliber violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

75. Despite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Caliber did not correct the errors or trade line to report accurately and completely. Instead, Caliber wrongfully furnished false and erroneous information that the subject loan was derogatory and that Plaintiff entered into a deed in lieu of foreclosure when in fact Plaintiff surrendered the subject property in her Chapter 13 bankruptcy.

76. A reasonable investigation by Caliber would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit file.

77. Had Caliber taken steps to investigate Plaintiff's valid disputes or TransUnion's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in her request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

78. By deviating from the standards established by the banking industry and the FCRA, Caliber acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion.

79. Caliber willfully and knowingly confirmed and reported the inaccurate information on Plaintiff's credit reports to TransUnion, rendering Caliber liable for punitive damages. 15 U.S.C. §1681n.

**WHEREFORE**, Plaintiff MICHELLE L. RUSHING requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

80. Plaintiff restates and realleges paragraphs 1 through 80 as though fully set forth herein.

81. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

82. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

83. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

84. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

85. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

86. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

87. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

88. Plaintiff provided TransUnion with all relevant information and documentation in her request for investigation and reinvestigation to reflect her bankruptcy discharge and that she is no longer personally liable for the subject loan.

89. TransUnion prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the subject loan as in a deed in lieu of foreclosure and 120 days past due when in fact Plaintiff had received a bankruptcy discharge, surrendered the subject property, and was no longer delinquent nor obligated to pay on the subject loan.

90. TransUnion prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject loan in violation of 15 U.S.C. §1681c(f).

91. Moreover, TransUnion failed to report the Caliber trade line as discharged in bankruptcy.

92. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed bankruptcy and received a discharge.

93. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, TransUnion prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

94. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

95. Had TransUnion taken any steps to investigate Plaintiff's valid disputes, it would have determined that subject loan was discharged in Plaintiff's bankruptcy on November 25, 2014.

96. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Caliber. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to Caliber regarding Plaintiff's disputes that TransUnion received from Plaintiff.

97. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject loan.

98. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

99. TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Caliber that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

100. TransUnion violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan. TransUnion is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

101. After Plaintiff's detailed disputes, TransUnion had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject loan.

102. TransUnion knew that the inaccurate reporting of the subject loan in Plaintiff's credit files under the Caliber trade line as delinquent with a deed in lieu of foreclosure notation after her bankruptcy discharge, would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing her bankruptcy.

103. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

104. Despite actual knowledge that Plaintiff's credit files contained erroneous information, TransUnion readily sold Plaintiff's inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

105. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

106. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

107. TransUnion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting her credit information accurately and completely.

108. TransUnion acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent on the subject loan after Plaintiff was discharged in bankruptcy.

109. TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

110. As stated above, Plaintiff was severely harmed by TransUnion's conduct.

111. TransUnion's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

**WHEREFORE**, Plaintiff MICHELLE L. RUSHING respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. An order directing that TransUnion immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST CALIBER)

112. Plaintiff restates and realleges paragraphs 1 through 112 as though fully set forth herein.

113. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

114. The subject loan qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

115. Caliber qualifies as a "debt collector" as defined by §1692a(6) because its primary business purpose is to collect debts and uses the mail, credit reporting, and/or the telephones to collect or attempt to collect delinquent consumer accounts.

116. Caliber qualifies as a "debt collector" because it acquired servicing rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

117. Caliber's credit reporting communications to Plaintiff were made in connection with a collection of the subject loan.

118. Section 524(a)(2)-(3) of the Bankruptcy Code, commonly known as the "discharge injunction," prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

119. Caliber violated 15 U.S.C. §§1692e(8) through its debt collection efforts on a debt discharged in bankruptcy.

### a. Violations of FDCPA § 1692e(8)

120. Caliber violated §1692e(8) by communicating false and inaccurate credit information to Transunion that it knew, or should have known, to be false by inaccurately reporting Plaintiff as entering into a deed in lieu of foreclosure and notating her account as 120 days past the payment due date. This information was inaccurate and misleading because the subject loan was discharged, the subject property was surrendered, and therefore Plaintiff had no further obligations to Caliber upon entry of her discharge on November 25, 2014.

121. 15 U.S.C. §1692e(8) also requires a debt collector to disclose the fact that a debt is disputed.

122. Caliber violated §1692e(8) when it failed to designate its trade line as disputed after receiving notice of Plaintiff's first dispute from Plaintiff and Transunion.

123. Caliber had actual knowledge of Plaintiff's bankruptcy discharge when it received numerous notices of such from the BNC, Plaintiff, and TransUnion.

124. Caliber attempted to dragoon and induce the Plaintiff into paying a debt that was not legally owed.

125. As an experienced creditor and debt collector, Caliber knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

126. Caliber knew or should have known that Plaintiff's discharged debt was uncollectable as a matter of law.

127. Upon information and belief, Caliber has no system in place to identify and cease collection of debts discharged in bankruptcy.

128. Concerned about the violations of her rights and protections afforded by her bankruptcy filing and subsequent discharge, Plaintiff sought the assistance of counsel to ensure that Caliber's collection efforts finally cease.

**WHEREFORE**, Plaintiff MICHELLE L.RUSHING respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**


Dated: December 28, 2018                    **Respectfully Submitted,**

/s/ Marwan R. Daher
Marwan R. Daher, Esq. ARDC#6325465
Omar T. Sulaiman, Esq. ARDC#6322837
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave, suite 200
Lombard, Illinois, 60148
Phone: (630) 537-1770
Fax: (630) 575-8188
mdaher@sulaimanlaw.com
osulaiman@sulaimanlaw.com