## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHELLE LAVETTE RUSHING,

    Plaintiff,

  v.

CALIBER HOME LOANS, INC. and
TRANSUNION LLC,

    Defendants.

Case No. 18-cv-08544

Honorable John Robert Blakey

## DEFENDANT CALIBER HOME LOANS, INC'S MOTION TO DISMISS
## COUNTS I AND III OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant, CALIBER HOME LOANS, INC. ("Caliber"), by its attorneys, Perkins Coie

LLP, through Berkely Cobb, hereby submits the following motion to dismiss Counts I and III of

Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).

### I. INTRODUCTION

On February 19, 2019, Plaintiff filed her First Amended Complaint against Caliber and

TransUnion LLC (referred collectively as "Defendants"). Within the Amended Complaint,

Plaintiff alleges the following two (2) counts against Caliber: violation of the Fair Credit

Reporting Act ("FCRA") (Count I); and violation of the Fair Debt Collection Practices Act

("FDCPA") (Count III). A true and correct copy of Plaintiff's First Amended Complaint is

attached hereto as Exhibit A.

Plaintiff's alleged claims stem from her assertion that Caliber mismanaged the credit

reporting of her mortgage loan after she obtained a bankruptcy discharge. However, Plaintiff's

Amended Complaint fails to allege sufficient facts to state claims under both the FCRA and

FDCPA against Caliber and should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    FACTUAL ALLEGATIONS

Plaintiff executed a mortgage note in the amount of $201,162.55 on June 25, 2007 (the "Loan"), in favor of Beneficial Mortgage Company ("Beneficial"). (Compl. ¶ 7). The Loan was secured by a mortgage on the property located at 16652 Thornton Avenue, South Holland, Illinois (the "Property"). (*Id.* ¶ 4). Subsequently, on December 29, 2012, Plaintiff filed a Chapter 13 bankruptcy petition and listed the Loan as a pre-petition debt secured by the mortgage. (*Id.* ¶¶ 8-9). Plaintiff's approved Chapter 13 plan proposed to surrender the Property to Beneficial in "full satisfaction of its claims." (*Id.* ¶¶ 14, 16). On November 25, 2014, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case and, correspondingly, Plaintiff's personal liability for the Loan was extinguished. (*Id.* ¶¶ 21, 26).

Plaintiff alleges that Caliber began servicing the Loan on February 12, 2014, following Plaintiff's default of the Loan. (*Id.* ¶ 20). Subsequently, around May 2018, Caliber allegedly began reporting "derogatory credit information to the CRAs" [sic] which was "false and inaccurate . . . in an attempt to collect on the subject debt." (*Id.* ¶¶ 32, 33). Plaintiff also alleges that in July 2018, when attempting to seek financing to purchase a home, she discovered that TransUnion and Caliber were reporting her Loan as 120 days past due, along with other "post-discharge derogatory information." (*Id.* ¶ 41).

On July 23, 2018, Plaintiff allegedly "mailed a detailed dispute letter directly to Caliber apprising it [sic] of inaccuracies on her credit reports related to her Loan from each of the [CRAs]." (*Id.* ¶ 36). Within the alleged dispute letter, Plaintiff alleges that she requested that Caliber correct its "credit reporting issues" as her "account is being reported as a deed in lieu of

foreclosure" when it "should be reported as a Chapter 13 bankruptcy." (*Id.* ¶ 38). In the Amended Complaint, Plaintiff does not dispute entering a deed-in-lieu agreement for the Property with the mortgagee. *Id.*

Also, Plaintiff's Amended Complaint alleges that she sent TransUnion two (2) credit disputes requesting that "her credit report be updated to reflect the discharged status of the [Loan]" on August 4, 2018, and September 17, 2018. (*Id.* ¶¶ 43, 49). Plaintiff further alleges "upon information and belief" Caliber received notice of Plaintiff's disputes from TransUnion and Caliber failed to report its "trade line as disputed and discharged" for the Loan. (*Id.* ¶¶ 44, 50, 53).

On October 16, 2018, TransUnion allegedly responded to Plaintiff's second credit dispute by stating that it completed its investigations and the "Caliber reporting was verified." (*Id.* ¶ 51). Despite TransUnion's verification of the Loan, Plaintiff maintains her allegation that both Defendants failed to reinvestigate Plaintiff's second dispute. *Id.* Plaintiff attached no correspondences, credit reports, or any other documents to the Amended Complaint to substantiate her factual allegations.

### III. LEGAL STANDARD

The Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss under Rule 12(b)(6): "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and, "[s]econd, its allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

In considering a motion to dismiss, a court is not required to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Instead a plaintiff must allege facts--not just formulas and stock legal conclusions--sufficient to "raise a right to relief above the speculative level." *Id.* Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations are merely "consistent with" liability, "too vague to provide notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

## IV. ARGUMENT

### A. Plaintiff's Amended Complaint Should Be Dismissed Because It Fails To State A Claim For A FCRA Violation Against Caliber.

Under the FCRA, once a furnisher of credit information receives notice from a CRA that a consumer has disputed reported information that the furnisher provided to the CRA, the furnisher is required to conduct a reasonable investigation and report the results of that investigation to the CRA. *See* 15 U.S.C. §§ 1681i(a)(2), 1681s–2(b). To state a claim for a violation of section 1681s–2(b), Plaintiff must allege facts that show: (1) Plaintiff notified TransUnion that it was reporting inaccurate information; (2) TransUnion reported the alleged inaccurate information to Caliber; and (3) Caliber failed to investigate and correct the allegedly inaccurate information. *Connor v. JP Morgan Chase Bank, N.A.*, No. 15 C 8601, 2016 WL 7201189, at *2 (N.D. Ill. Mar. 22, 2016).

Plaintiff's Amended Complaint attempts to allege that Caliber violated the FCRA when it allegedly reported Plaintiff's Loan as 120 days past due and failed to "notate the account as disputed and discharged." (Compl. at ¶ 41). However, Plaintiff fails to plead sufficient facts to sustain any of these alleged FCRA claims.

1. **Plaintiff fails to sufficiently allege that Caliber violated Section 1681s-2(b) of the FCRA.**

Plaintiff's Amended Complaint alleges that Caliber violated numerous provisions of the FCRA by: (1) failing to conduct an investigation and reinvestigation in response to Plaintiff's dispute letters (Compl. ¶ 66); (2) failing to review all materials allegedly provided by TransUnion (*id.* ¶ 67); (3) failing to report the subject debt as disputed (*id.* ¶ 69); (4) failing to modify the inaccurate information in Plaintiff's Loan account (*id.* ¶ 70); (5) failing to report investigation results to TransUnion (*id.* ¶¶ 71-72); (6) failing to conduct a reasonable reinvestigation within 30 days of receiving notice of the dispute from TransUnion (*id.* ¶ 73); and failing to take the required action with respect to Plaintiff by the deadlines set forth in Section 1681i(a)(i) (*id.* ¶ 74*).

Plaintiff's allegations that Caliber violated §1681s-2(b) when it allegedly failed to investigate and reinvestigate Plaintiff's credit reporting disputes received directly from Plaintiff, (*id.* ¶¶ 66, 67, 69) fail because §1681s-2(b) only imposes a duty on Caliber when it is notified of disputed debt information by a CRA - which is TransUnion in this case. *See* 15 U.S.C §1681s-2(b); see *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005) (where this Court dismissed a plaintiff's FCRA claim against a loan servicer, holding that a plaintiff's notice of disputed information was improper notice to the loan furnisher under Section 1681s-2(b)). Like the court's holding in *Rollins*, the duties set forth in Section 1681–2(b) were never triggered by disputes sent by Plaintiff to Caliber and, therefore, it is impossible for Caliber to have violated 1681–2(b) for these allegations.

Next, Plaintiff's allegations that Caliber violated Section 1681s-2(b)(1)(A)-(B) when it purportedly failed to review and investigate Plaintiff's dispute allegedly provided by TransUnion (*id.* ¶¶ 66, 67) also fail because these allegations are wholly conclusory. Plaintiff's sole support

for these allegations are its own assumptions that if Caliber conducted the requisite investigation "it would have corrected the inaccurate designation of the [L]oan." (Compl. ¶ 68). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, these allegations ignore that TransUnion confirmed to Plaintiff that Caliber's "reporting was verified" regarding Plaintiff's Loan. (Compl. ¶51). As such, these allegations are insufficiently pled and should be dismissed.

Additionally, Plaintiff's allegations that Caliber failed to report its results of its investigation to TransUnion or modify, delete or permanently block the alleged inaccurate information on Plaintiff's files (*id.* ¶ 70) in violation of Sections 1681s-2(b)(1)(C) through (E) are insufficiently pled. Section 1681s–2(b)(1)(C) requires that Caliber "report the results of the investigation to [TransUnion]." Sections 1681s–2(b)(1)(D) and (E) require that if an investigation reveals that disputed information is incomplete, inaccurate, or unable to be verified, the furnisher must report that finding to the CRAs and modify, delete, or block reporting of the information. *See* 15 U.S.C. §§ 1681s–2(b)(1)(D), (E). Here, Plaintiff never alleges facts showing that *Caliber concluded* that its reporting of Plaintiff's Loan was incomplete, inaccurate, or unable to be verified. On the contrary, Plaintiff's Amended Complaint alleges that: (1) Caliber's "reporting was verified" to TransUnion after Plaintiff disputed her Loan in October 2018; and (2) Caliber "confirmed and reported the [alleged] inaccurate information." (Compl. ¶¶ 51, 79). Because Caliber "verified" and "confirmed" the results of its investigation and reinvestigation to TransUnion, the obligations enumerated in Sections 1681s–2(b)(1)(C) through (E) were never triggered, and, thus, were never violated by Caliber.

Next, Plaintiff's allegation that Caliber failed to conduct a reasonable reinvestigation within 30 days of receiving notice of a dispute from TransUnion and deadlines set forth in Section 1681i (a)(1) of the FCRA (Compl. ¶¶ 73-74) is flawed because Section 1681i (a)(1) applies to CRAs, not to furnishers of information like Caliber. *See* 15 U.S.C § 1681i(a)(1). The provisions that provide Plaintiff's a private right of action against Caliber are listed in Section 1681s–2(b), not Section 1681i (a)(1). *Neiman v. Chase Bank, USA, N.A.*, No. 13 C 8944, 2014 WL 3705345, at *6 (N.D. Ill. July 25, 2014).

For the reasons stated above, Plaintiff failed to sufficiently allege that Caliber violated Section 1681s-2(b) of the FCRA. Accordingly, this Court should dismiss Plaintiff's alleged violations of the FCRA against Caliber pursuant to Rule 12(b)(6).

## 2. **Plaintiff cannot state a claim for a willful violation of the FCRA.**

A willful violation of the FCRA occurs only when a furnisher of credit commits an act known to violate its obligations under the FCRA or in reckless disregard for those obligations. *Safeco Ins. Co. of Am. v. Bu*rr, 551 U.S. 47, 57 (2007). Moreover, "a company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." (*Id.* ¶ 69).

Here, Plaintiff offers nothing more than conclusory allegations that Caliber "acted with reckless disregard for its duty as a furnisher" and that Caliber "willfully and knowingly confirmed and reported the inaccurate information." (Compl. ¶¶ 78, 79). Again, Plaintiff's conclusory allegations are insufficient to support a claim for willfulness. *Smith v. Safeco Ins.*, No. 13 C 2788, 2013 WL 5609323, *1 (N.D. Ill. Oct. 11, 2013). Moreover, when considering

the history of this case, the prior settled case, Plaintiff's loan default, and the Loan's discharge, any reporting inaccuracies of the Loan most likely resulted from a reporting error, and not from a reckless disregard of the FCRA or a willful violation of the FCRA. Accordingly, to the extent Plaintiff's FCRA claim is not dismissed in its entirety, her claim for a willful violation and punitive damages should nonetheless be dismissed.

### B. Plaintiff Fails To State A Claim Under The FDCPA Against Caliber.

The FDCPA prohibits debt collectors from engaging in abusive, deceptive, or unfair debt-collection practices. 15 U.S.C. § 1692 *et seq*. For the FDCPA to apply, two (2) threshold criteria must be met: (1) the defendant must qualify as a "debt collector" within the meaning of the term in the FDCPA; and (2) the communication at issue must have been made "in connection with the collection of any debt." 15 U.S.C. §§ 1692a, 1692c(a)–(b), 1692e, 1692g. Particularly, Section 1692e(8) of the FDCPA provides that a debt collector may not "communicat[e]...to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

Caliber disputes the second criteria and argues that it made no communication for the collection of Plaintiff's Loan and did not violate the FDCPA in any manner.

### 1. Caliber engaged in no debt collection efforts against Plaintiff under the FDCPA.

When determining whether a communication was sent in connection with the collection off any debt, courts consider: (1) the presence or absence of a demand for payment; (2) the purpose and context of the communication; and (3) the nature of the parties' relationship. *Brand v. Caliber Home Loans, Inc.*, No. 16-CV-03432, 2018 WL 4898572, at *4 (N.D. Ill. Oct. 9, 2018) (internal citations omitted). If the communication was sent "specifically to induce the debtor to settle [the] debt," then the communication is an attempt to collect a debt under the

FDCPA. *Id.*; *Green v. Specialized Loan Servicing, LLC*, No. 15-cv-513-jdp, 2017 WL 213836, at *4 (W.D. Wis. Jan. 18, 2017).

In *Green,* the plaintiffs alleged that the loan servicer attempted to collect a debt that was discharged in bankruptcy and the loan servicer violated the FDCPA when it erroneously reported the loan as being 180 days past due in its tradeline on one of the plaintiffs' credit reports. *Green,* 2017 WL 213836, at *1-2. The district court ruled in favor of the loan servicer and held that the reported past due notation in the tradeline, alone, "does not mean that [the loan servicer] reported information about the [plaintiffs'] discharged loan in connection with an attempt to collect a debt." *Id.* *5. The Court reasoned that the plaintiff failed to show that the tradeline was connected to debt collection efforts by the loan servicer to collect on their discharged debt, regardless of the inaccuracy of the tradeline. *Id.*

Plaintiff's FDCPA claims are factually similar to the FDCPA claims alleged in *Green.* Here, Plaintiff's Amended Complaint alleges that Caliber violated Section 1692e of the FDCPA by "inaccurately reporting the subject loan as 120 days past the payment due date" in connection with collecting the discharged debt. (Compl. at ¶¶ 117, 119, 120). However, like the plaintiffs in *Green,* Plaintiff's Amended Complaint is void of any facts that show Caliber attempted to collect or demanded payment for the discharged Loan from Plaintiff. Notably, the Complaint also never alleges that Caliber reported a balance due for the discharge Loan on Plaintiff's credit report. On the contrary, Plaintiff's Amended Complaint refers to a deed-in-lieu entered for the Property, and states: (1) the Loan was discharged; and (2) Plaintiff's "business relationship with Caliber" was terminated after the bankruptcy. (Compl. at ¶¶ 6, 38). These alleged facts don't support any debt collection efforts made by Caliber. Simply concluding that Caliber engaged in

collection efforts without any supporting facts is fatal to Plaintiff's FDCPA claim. *See Green*, 2017 WL 213836, at \*6.

Secondly, Plaintiff's allegation that Caliber failed to designate Plaintiff's Loan as disputed on its trade line on her credit report (Compl. at ¶ 121) is also not an attempt to collect the discharged debt. The Seventh Circuit holds that debt collectors under the FDCPA are not required to "engage in affirmative debt-collection conduct" to satisfy the statute. *McCready v. eBay, Inc.*, 453 F.3d 882, 888-89 (7th Cir. 2006) (where the Seventh Circuit dismissed a FDCPA claim against a defendant when the plaintiff failed to allege any affirmative actions taken by the defendant to collect the subject debt from the plaintiff). Like the defendant in *McCready*, Caliber "remained passive" in its actions and Plaintiff's Amended Complaint fails to allege how Caliber's alleged failure to report a loan as disputed equates to affirmative debt collection efforts under the FDCPA.

Because Plaintiff's Amended Complaint is void of any facts supporting that Caliber engaged in any debt collection efforts for Plaintiff's discharged debt, Plaintiff fails to state a claim under the FDCPA. Accordingly, Plaintiff's FDCPA claim should be dismissed with prejudice.

### 2. Caliber was not required to update its tradeline to reflect Plaintiff's dispute of the reporting of her Loan under the FDCPA.

If this Court finds that Plaintiff sufficiently alleges that Caliber engaged in collection efforts under the FDCPA, Plaintiff's Amended Complaint still cannot allege that Caliber violated Section 1692e(8) when it allegedly failed to update its tradeline's description of Plaintiff's Loan as disputed. Debt collectors have "no affirmative obligation under the FDCPA, after becoming aware of a dispute, to update the information" already reported to a credit reporting agency or to remove the tradeline. *Gordon v. Syndicated Office Sys., LLC*, No. 16 C 4440, 2017 WL

1134489, at *2 (N.D. Ill. Mar. 27, 2017) citing *Wilhelm v. Credico, Inc.*, 519 F.3d 416 (8th Cir. 2008) (holding that when debt collector learns of dispute after reporting the debt to a credit bureau, the dispute need not also be reported). In following the decision in *Gordon,* Caliber was not required to update its tradeline to reflect the Plaintiff's dispute of the reporting of her Loan after becoming aware of her dispute.

## V.    CONCLUSION

WHEREFORE, Defendant Caliber Home Loans, Inc. respectfully moves this Court to grant its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss Counts I and III of Plaintiff's First Amended Complaint with prejudice.

**Dated: March 13, 2019**

Respectfully submitted,

**CALIBER HOME LOANS, INC.**

By:  s//: *Berkely Cobb*
        One of Its Attorneys

Berkely Cobb
Yasamin Oloomi
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
312.324.8400

## CERTIFICATE OF SERVICE

I certify that on March 13, 2019, she electronically filed the foregoing motion with the Court, a copy of which will be served on all counsel via the Court's CM/ECF System.

Respectfully Submitted,

By: s//: *Berkely Cobb*

Berkely Cobb
Yasamin Oloomi
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603
Tel.: (312) 324-8400
Email: bcobb@perkinscoie.com
Email: yoloomi@perkinscoie.com

***Counsel for Defendant Caliber Home Loans, Inc.***

- 12 -

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHELLE LAVETTE RUSHING, | CIVIL ACTION 1:18-cv-08544 |
|     Plaintiff, | |
| v. | COMPLAINT |
| CALIBER HOME LOANS, INC and TRANSUNION LLC, | JURY TRIAL DEMANDED |
|     Defendants. | |

### FIRST AMENDED COMPLAINT

**NOW COMES** Michelle L. Rushing ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Caliber Home Loans, Inc. ("Caliber"), and TransUnion, LLC ("TransUnion") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, Caliber's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in the Northern District of Illinois.

1

## PARTIES

4. Plaintiff, Michelle Rushing, is a consumer and natural person over 18 years of age who, at all times relevant, owned and resided at the property located at 16652 Thornton Avenue, South Holland, Illinois 60473 ("subject property").

5. Defendant Caliber is a Delaware corporation with its principal place of business located at 2591 Dallas Parkway, Suite 403, Frisco, Texas 75034. Caliber is a foreign company whose primary business is the collection of debts owed to others and servicing loans across the country, including the state of Illinois. Caliber is a furnisher of credit information to the major credit reporting agencies, including TransUnion.

6. Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

## BANKRUPTCY CASE

7. On June 25, 2007, Plaintiff executed a mortgage and note in the amount of $201,162.55 ("subject loan" or "subject debt") in favor of Beneficial Mortgage Company ("Beneficial") secured by the subject property.

8. On December 29, 2012, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 12-50696 ("bankruptcy").

9. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to Beneficial, in the amount of $205,589.00, secured by the subject property.

10. On January 12, 2013, because Plaintiff listed Beneficial as a creditor, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's bankruptcy filing. On January 14, 2013, the BNC served Defendants with notice of Plaintiff's Original Plan.

11. Plaintiff's Original Plan proposed to treat Beneficial's claim as follows:

> "Debtor is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial, in full satisfaction of its claims."

12. On March 5, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from Beneficial appeared at the 341 Meeting of Creditors.

13. On March 27, 2013, the Plaintiff filed her amended Chapter 13 Plan ("Modified Plan").

14. Plaintiff's Modified Plan proposed to treat Beneficial's claim as follows:

> "Debtor is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial, in full satisfaction of its claims."

15. On April 22, 2013, the Plaintiff filed a second amended Chapter 13 Plan ("Second Modified Plan").

16. Plaintiff's Second Modified Plan proposed to treat Beneficial's claim as follows:

> "Debtor is surrendering the real property located at 16652 Thornton Avenue, South Holland, Illinois to Beneficial, in full satisfaction of its claims."

17. At no time did Beneficial file a proof of claim for the subject debt in Plaintiff's bankruptcy case.

18. On April 25, 2013, Plaintiff's Second Modified Plan was confirmed by the Honorable Janet S. Baer.

19. Plaintiff fully performed her duties as set forth in her confirmed Chapter 13 Plan.

20. By February 12, 2014, Caliber had acquired the servicing rights to the subject loan after Plaintiff was in default on the subject loan.

3

21. On November 25, 2014, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.

22. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

23. On November 27, 2014, the BNC served Beneficial and TransUnion with the Order of Discharge.

24. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loan by Beneficial or any other party.

25. On March 10, 2015, Plaintiff's bankruptcy case closed.

26. Plaintiff's personal liability on the subject debt was extinguished via her bankruptcy discharge, thus terminating the business relationship with Caliber and any of its successors and assigns.

### CALIBER'S UNLAWFUL COMMUNICATIONS

27. After Caliber acquired the servicing rights to the subject debt, and with actual knowledge of Plaintiff's Chapter 13 bankruptcy and her subsequent discharge, Caliber began actively reporting inaccurate credit information regarding the subject debt to the credit reporting agencies ("CRA's").

28. As a result, on December 2, 2015, Plaintiff filed a complaint in the District Court for Northern District of Illinois, styled *Rushing v. Caliber Home Loans, Inc. and Equifax Information Services, LLC*, Case No. 15-cv-09252 ("Lawsuit"), alleging Caliber and Equifax violated numerous sections of the FCRA.

4

29. The lawsuit settled on May 4, 2016.

30. The lawsuit was dismissed in June 2016.

31. After the lawsuit was settled and dismissed, Caliber ceased reporting the subject debt to the major credit reporting agencies.

32. However, on or around May 2018, Caliber *again* began reporting derogatory credit information to the CRA's.

33. Despite having multiple notices of Plaintiff's bankruptcy filing and settling a case that alleged unlawful credit reporting activity, Caliber brazenly continued to report false and inaccurate credit information to the CRAs in an attempt to collect on the subject debt.

34. Caliber's collection efforts were highly upsetting to Plaintiff as she was led to believe that the previous lawsuit and her bankruptcy had no legal effect and that she was still obligated to pay on the subject debt; which was the driving force in her decision to seek bankruptcy protection.

35. Plaintiff has been forced to *again* expend time, costs, and effort in consulting with her attorneys and disputing the subject loan as she was led to believe that her previous lawsuit and her bankruptcy had no legal effect as a result of Caliber's conduct.

### PLAINTIFF'S DIRECT DISPUTE TO CALIBER

36. On July 23, 2018, Plaintiff mailed a detailed dispute letter directly to Caliber apprising them of inaccuracies on her credit reports from each of the credit reporting agencies.

37. In her detailed dispute letter, Plaintiff requested Caliber to correct credit reporting issues as Caliber continued to report the subject loan as derogatory to the credit reporting agencies.

38. Specifically, Plaintiff stated: "My account is being reported as deed in lieu of foreclosure. My account should be reported as Chapter 13 bankruptcy. When I filed Chapter 13 I filed to surrender my property. I was released from the note of the property and no longer financially

5

responsible. My credit report should state Chapter 13 bankruptcy. Please update my credit reports immediately with the correct information or I will have to retain legal counsel."

39. On October 31, 2018, Caliber responded to Plaintiff to inform her that it could not determine the specific information that Plaintiff is requesting and it finds that Plaintiff's request to be overbroad.

40. Despite Caliber's actual knowledge of Plaintiff's Chapter 13 bankruptcy and Plaintiff's detailed dispute letter, Caliber willfully choose to continue to report the subject loan as derogatory to the credit reporting agencies. Caliber failed to notate Plaintiff's account as disputed and discharged.

## CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO TRANSUNION

41. In July 2018, Plaintiff attempted to seek financing from Quicken Loans to purchase a new home. As a result, Quicken Loans accessed Plaintiff's consumer report to make a credit worthiness determination. Plaintiff discovered that Transunion and Caliber Loans were reporting the subject loan as 120 days past due date, and multiple post-discharge derogatory information, including the failure to notate the account as disputed and discharged.

42. The reporting of the subject loan was inaccurate, incomplete, and materially misleading because the subject loan was discharged in Plaintiff's bankruptcy and should be reporting without any post-discharge derogatory information.[1]

---

[1] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."

6

### a. Plaintiff's First Dispute to Transunion

43. On August 4, 2018, Plaintiff sent a detailed dispute to Transunion requesting that her credit report be updated to reflect the discharged status of the Caliber subject loan. Plaintiff specifically disputed the Caliber trade line.

44. Upon information and belief, Caliber received notice of Plaintiff's dispute and all enclosed supporting documents from Transunion within five days of Transunion receiving Plaintiff's first dispute. *See* 15 U.S. Code §1681i(a)(2).

### b. Transunion's Failure to Reasonably Investigate Plaintiff's First Dispute

45. On September 7, 2018, Plaintiff accessed her credit report to find Caliber and Transunion were continuing to report the Caliber account with a derogatory payment status of 120-149 days late.

46. More strikingly, TransUnion and Caliber failed to report the Caliber trade line as disputed and discharged.

47. Despite having actual knowledge of Plaintiff's bankruptcy and after receiving Plaintiff's detailed dispute, TransUnion and Caliber continued to report the subject loan with a "Status" of over 120 Days Past Due as of September 1, 2018.

48. The reporting of the Caliber trade line is patently inaccurate, incomplete and creates a materially misleading impression that Plaintiff is delinquent on the subject loan. However, Plaintiff is no longer personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on November 25, 2014.[2]

---

[2] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to Caliber, as Plaintiff's Confirmed Chapter 13 Plan surrendered the subject property to Beneficial in full satisfaction of its claims.

### a. Plaintiff's Second Dispute to Transunion

49. On September 17, 2018, Plaintiff sent *another* credit dispute to Transunion requesting that her credit file be updated to reflect the discharged status of the Caliber subject loan. Plaintiff specifically requested Caliber and TransUnion to investigate the reason the subject loan had a derogatory status of 120 days late.

50. Upon information and belief, Caliber received notice of Plaintiff's second dispute and all relevant information from Transunion within five days of Transunion receiving Plaintiff's second dispute. *See* 15 U.S. Code §1681i(a)(2).

### b. Transunion's Response to Plaintiff's Second Dispute

51. On October 16, 2018, TransUnion responded by failing to properly reinvestigate Plaintiff's second dispute. Specifically, TransUnion stated that its investigation of the dispute is now complete and the Caliber reporting was verified. TransUnion and Caliber failed to properly investigate Plaintiff's detailed dispute.

52. Despite having actual knowledge of Plaintiff's bankruptcy discharge and after receiving Plaintiff's detailed disputes, TransUnion and Caliber continued to report the subject loan with a derogatory pay status of "120 Days Past Due Date."

53. Moreover, Transunion and Caliber failed to report the subject loan as disputed and discharged in bankruptcy.

54. The reporting of the Caliber trade line is inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent on the subject loan. However, Plaintiff is no longer personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on November 25, 2014.

**IMPACT OF CONTINUING
INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILES**

55. As of today, the erroneous reporting of the Caliber account continues to paint a false and damaging picture of Plaintiff. Defendants have yet to update the Caliber account to accurately reflect the discharged status, accurate payment history, including the failure to communicate that the subject debt is being disputed.

56. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to her ability to regain her good name and the credit rating that she deserves and has worked hard to earn by completing her Chapter 13 Plan.

57. The inaccurate reporting of the subject debt continues to have significant adverse effect on Plaintiff's credit rating and her ability to obtain financing as it creates a false impression that the Caliber account is due and owing, rendering Plaintiff a high risk consumer.

58. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

59. Moreover, Plaintiff has been denied credit as a result of Defendants' erroneous reporting of the Caliber trade line.

60. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous reporting of the Caliber trade line.

### COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST CALIBER)

61. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

62. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

63. Caliber is a "person" as defined by 15 U.S.C. §1681a(b).

64. Caliber is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

65. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

66. Caliber violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation and reinvestigation from TransUnion and Plaintiff.

67. Caliber violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by TransUnion and Plaintiff.

68. Had Caliber reviewed the information provided by Plaintiff and TransUnion, it would have corrected the inaccurate designation of the subject loan to TransUnion. Instead, Caliber wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

69. Caliber violated 15 U.S.C. §1681s-2(b) by failing to report that the Plaintiff disputed the subject debt.

70. Caliber violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's files.

71. Caliber violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's dispute with TransUnion.

72. Caliber violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion after being put on notice and discovering inaccurate reporting with respect to the subject loan.

73. Caliber failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from TransUnion under 15 U.S.C. §1681i(a)(1).

74. Caliber violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

75. Despite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Caliber did not correct the errors or trade line to report accurately and completely. Instead, Caliber wrongfully furnished false and erroneous information that the subject loan was derogatory when in fact Plaintiff surrendered the subject property in her Chapter 13 bankruptcy.

76. A reasonable investigation by Caliber would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit file.

77. Had Caliber taken steps to investigate Plaintiff's valid disputes or TransUnion's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in her request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

78. By deviating from the standards established by the banking industry and the FCRA, Caliber acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion.

79. Caliber willfully and knowingly confirmed and reported the inaccurate information on Plaintiff's credit reports to TransUnion, rendering Caliber liable for punitive damages. 15 U.S.C. §1681n.

**WHEREFORE**, Plaintiff MICHELLE L. RUSHING requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

80. Plaintiff restates and realleges paragraphs 1 through 80 as though fully set forth herein.

81. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

82. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

83. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

12

84. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

85. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

86. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

87. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

88. Plaintiff provided TransUnion with all relevant information and documentation in her request for investigation and reinvestigation to reflect her bankruptcy discharge and that she is no longer personally liable for the subject loan.

89. TransUnion prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the subject loan as120 days past due when in fact Plaintiff had received a bankruptcy discharge, surrendered the subject property, and was no longer delinquent nor obligated to pay on the subject loan.

90. TransUnion prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject loan in violation of 15 U.S.C. §1681c(f).

91. Moreover, TransUnion failed to report the Caliber trade line as discharged in bankruptcy.

13

92. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed bankruptcy and received a discharge.

93. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, TransUnion prepared patently false, incomplete and materially misleading consumer reports concerning Plaintiff.

94. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

95. Had TransUnion taken any steps to investigate Plaintiff's valid disputes, it would have determined that subject loan was discharged in Plaintiff's bankruptcy on November 25, 2014.

96. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Caliber. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to Caliber regarding Plaintiff's disputes that TransUnion received from Plaintiff.

97. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject loan.

98. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

99. TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Caliber that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

14

100. TransUnion violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan. TransUnion is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

101. After Plaintiff's detailed disputes, TransUnion had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject loan.

102. TransUnion knew that the inaccurate reporting of the subject loan in Plaintiff's credit files under the Caliber trade line as delinquent after her bankruptcy discharge, would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing her bankruptcy.

103. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

104. Despite actual knowledge that Plaintiff's credit files contained erroneous information, TransUnion readily sold Plaintiff's inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

105. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

106. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

107. TransUnion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting her credit information accurately and completely.

108. TransUnion acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent on the subject loan after Plaintiff was discharged in bankruptcy.

109. TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

110. As stated above, Plaintiff was severely harmed by TransUnion's conduct.

111. TransUnion's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

**WHEREFORE**, Plaintiff MICHELLE L. RUSHING respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that TransUnion immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST CALIBER)

112. Plaintiff restates and realleges paragraphs 1 through 112 as though fully set forth herein.

113. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

114. The subject loan qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

115. Caliber qualifies as a "debt collector" as defined by §1692a(6) because its primary business purpose is to collect debts and uses the mail, credit reporting, and/or the telephones to collect or attempt to collect delinquent consumer accounts.

116. Caliber qualifies as a "debt collector" because it acquired servicing rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

117. Caliber's credit reporting communications to Plaintiff were made in connection with a collection of the subject loan.

118. Section 524(a)(2)-(3) of the Bankruptcy Code, commonly known as the "discharge injunction," prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

119. Caliber violated 15 U.S.C. §§1692e(8) through its debt collection efforts on a debt discharged in bankruptcy.

17

Case: 1:18-cv-08544 Document #: 18 Filed: 02/19/19 Page 18 of 19 PageID #:101

### a. Violations of FDCPA § 1692e(8)

120. Caliber violated §1692e(8) by communicating false and inaccurate credit information to Transunion that it knew, or should have known, to be false by inaccurately reporting the subject loan as 120 days past the payment due date. This information was inaccurate and misleading because the subject loan was discharged, the subject property was surrendered, and therefore Plaintiff had no further obligations to Caliber upon entry of her discharge on November 25, 2014.

121. 15 U.S.C. §1692e(8) also requires a debt collector to disclose the fact that a debt is disputed.

122. Caliber violated §1692e(8) when it failed to designate its trade line as disputed after receiving notice of Plaintiff's first dispute from Plaintiff and Transunion.

123. Caliber had actual knowledge of Plaintiff's bankruptcy discharge when it received numerous notices of such from the BNC, Plaintiff, and TransUnion.

124. Caliber attempted to dragoon and induce the Plaintiff into paying a debt that was not legally owed.

125. As an experienced creditor and debt collector, Caliber knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

126. Caliber knew or should have known that Plaintiff's discharged debt was uncollectable as a matter of law.

127. Upon information and belief, Caliber has no system in place to identify and cease collection of debts discharged in bankruptcy.

128. Concerned about the violations of her rights and protections afforded by her bankruptcy filing and subsequent discharge, Plaintiff sought the assistance of counsel to ensure that Caliber's collection efforts finally cease.

**WHEREFORE**, Plaintiff MICHELLE L.RUSHING respectfully prays this Honorable Court for the following relief:

    a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.  Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    c.  Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

    d.  Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**


Dated: February 19, 2019                **Respectfully Submitted,**

                                    /s/ Marwan R. Daher
                                    Marwan R. Daher, Esq. ARDC#6325465
                                    Omar T. Sulaiman, Esq. ARDC#6322837
                                    *Counsel for Plaintiff*
                                    Sulaiman Law Group, Ltd.
                                    2500 S. Highland Ave, suite 200
                                    Lombard, Illinois, 60148
                                    Phone: (630) 537-1770
                                    Fax: (630) 575-8188
                                    mdaher@sulaimanlaw.com
                                    osulaiman@sulaimanlaw.com